THE COMMERCIAL UNION ASSURANCE COMPANY (LIMITED), appellant,

*v.*

THE NEW JERSEY RUBBER COMPANY, respondent.

[Filed March 3d, 1902.]

1. The complainant, an insurance company, and the defendant, a manufacturing corporation, entered into an agreement by which the complainant was to issue its policy of insurance upon the defendant's plant and the defendant was to procure other concurrent insurance so distributed that the complainant, under its policy, should be liable for a proportionate part only upon any given item of loss. The complainant issued its policy and the defendant failed to procure such concurrent and proportionate insurance. After the occurrence of a fire loss the complainant tendered to the defendant the proportionate part of such loss for which it would have been liable under its agreement with the defendant, at the same time canceling its policy and returning the unearned premium. An action at law on the policy was then brought by the defendant, to enjoin which and for equitable relief the complainant filed its original bill. The action at law was permitted to proceed to judgment, which was that, by the cancellation of its policy, the complainant had recognized its validity.—*Held*, upon a demurrer to a supplemental bill, that this adjudication did not make the complainant's liability on its policy *res judicata*, so as to prevent the court of equity from entertaining its bill for relief.

2. *Held, also,* that where a matter *in pais* has acquired a fixed import at law, but may have an opposite significance in equity, a judgment according to such matter, in its strictly legal consequences, will not control the effect to be given to it by a court of equity.

On appeal from an order sustaining a demurrer advised by Vice-Chancellor Emery, whose opinion is reported in *16 Dick. Ch. Rep. 446.*

*Mr. Richard V. Lindabury,* for the appellant.

*Mr. Richard S. Kuhl* and *Mr. John Rellstab,* for the respondent.

The opinion of the court was delivered by

GARRISON, J.

This appeal presents a question of *res judicata* raised by a demurrer to a supplemental bill. The original bill, which was filed to enjoin an action at law and for equitable relief, was arrested pending the action at law, which resulted in an adjudication, which, when exhibited to the court of chancery by a supplemental bill, was, upon demurrer, deemed to have disposed conclusively of the case made by the complainant under the doctrine of *res judicata*. The propriety of this order is the subject of the complainant's appeal, upon which cognizance will be taken of those facts that are established by this course of pleading and by such prior adjudication.

The complainant and appellant is an insurance company, the defendant is a manufacturing corporation, having its plant in this state. In the latter part of July, 1897, these parties entered into an agreement, which is thus described and interpreted in the opinion delivered in this court in the action at law above referred to (*New Jersey Rubber Co.* v. *Commercial Assurance Co., Ltd., 35 Vr. 580*):

"The uncontradicted evidence showed that in the negotiations for insurance by the defendant it was agreed between the plaintiff and the defendant that the latter should issue its policy to the amount of $25,000, distributed among the several items of property, and that the plaintiff should procure from other insurers policies on the same property to the amount of $75,000, at least, which should be concurrent and proportionate with the policy of the defendant. The true intent of this agreement was that, simultaneously with the complete execution of the defendant's contract, the plaintiff would procure other insurance of such a character as would limit the defendant's responsibility on its policy to one-fourth of the loss happening to any item of the property insured. This agreement was not carried out by the plaintiff." The opinion also says: "In order to render the policy of the defendant fully operative, delivery by the defendant and acceptance by the plaintiff were necessary, and the legal

effect of the agreement mentioned was to preclude the plaintiff from accepting the policy unless it had, at the same time, such other insurance as was contemplated. Since, in the present case, the plaintiff did not comply with the stipulation which was to be fully performed by it on acceptance of the defendant's policy, it could not, and did not, lawfully accept that policy while the stipulation remained in force."

It is therefore established that the policy of the complainant, although it had passed into the possession of the defendant, was not a contract, because of the default of the defendant. Of this default the complainant was ignorant until after the occurrence of a fire by which property described in the policy was destroyed. This was upon October 21st, 1897. On November 20th, 1897, the complainant tendered to the defendant the proportionate amount of such loss for which it would have been liable had the defendant not defaulted, at the same time canceling its policy, under its terms, and returning the unearned premium. On February 4th, 1898, the defendant commenced an action at law against the complainant upon the policy, which was in its possession. On March 4th, 1898, the complainant exhibited to the chancellor its bill, stating its case, and praying for an injunction to restrain the defendant from proceeding with its action at law, and also asking

"that it may be declared by this court that the real agreement between the parties aforesaid was that the said contract of insurance between your orator and the defendant was exactly concurrent and proportionate with the policies of insurance issued to the defendant by the said mutual companies."

There was a prayer for specific and for general relief. In its bill the complainant stated that it had offered to pay to the defendant, and was still willing and ready to pay, the proportionate amount of said loss under its agreement. It also stated that it had defences that were available only in a court of equity, and that it was unable to interpose these defences in the said action at law, because the written contract of insurance did not contain the agreement made between the complainant and the defendant, stating that agreement as it was afterwards inter-

preted in the opinion of this court, above cited. The bill also prayed for a reformation of its said written contract of insurance.

Upon the coming in of this bill an order to show cause, with a restraining clause, was allowed in the first instance, but, on March 29th, was so modified as to permit the action at law to proceed, reciting that it appeared

"that the complainant claims to have legal defences to the action at law set forth in its bill of complaint outside of the facts presented as the basis for equitable relief, and that the facts presented as a basis for equitable relief may also be held to be sufficient defences at law, in which event no intervention of this court would be necessary."

The parties thereupon went to trial in the action at law, in which it was held that, by the cancellation of the written contract on which the action was based, the defendant had recognized it as a valid instrument in force at the time of the fire; which judgment was afterwards affirmed by this court. The complainant then returned to the court of equity, and, by means of a supplemental bill, exhibited the futility of its defence to the policy in the court of law, and renewed the prayer for equitable consideration contained in its original bill, with an added prayer that the defendant be enjoined from proceeding to execute its judgment at law. To this bill a demurrer was interposed by the defendant and sustained by the court, upon the ground that the judgment at law had conclusively settled the rights of the complainant. The appeal of the complainant now presents the question of the propriety of this order.

This brief rehearsal demonstrates more satisfactorily than any mere argument could that, in its disposition of the complainant's case, the court of chancery followed the concrete ruling of the court of law, without noting the distinction therein made between the policy of insurance and the contract between the parties. Mr. Justice Dixon, in the opinion above cited, made it perfectly clear that the contract between the parties was not the policy of insurance. The substantial contract, he declared, was a bilateral one, in which each of the parties was an actor, and that while the complainant's policy was contemplated as a factor of this executory

contract, standing alone it imported no obligation of any sort. Keeping this distinction in mind, it is evident that the contract submitted by the complainant to the court of equity, and that upon which the defendant sued at law, were totally different affairs. Indeed, under the law of the case, their only point of similarity was that neither of them had any legal existence. The contract submitted to the chancellor was the one that would have resulted if the defendant had not made default; that upon which the defendant sued was the one that had resulted from that default. The former was sought to be validated as a contract in equity by the fact that the party who had been wronged had done equity, which very circumstance, maugre its purpose, was, by force of immemorial law, a waiver of all defences strictly legal. For reasons presently to be stated, the court of equity might, with marked propriety, have held that the doctrine of *res judicata* would not suffer impairment by a decision that, where a matter *in pais* had acquired a fixed import at law, but might have an opposite significance in equity, a judgment that accorded to such matter its strictly legal consequences would not control the effect to be given to it by a court of equity. If this be not so, the rule in question is a snare for honest suitors. Of this the present case is its own best illustration. The complainant, in order to merit equitable consideration, had to do equity under the terms of its legal obligation, but to recognize such obligation for any purpose was, in a court of law, to acknowledge its existence for all purposes. Hence, to invoke equity the complainant must, at the same time, renounce law—that was its dilemma; but, if the very act by which it did equity be of itself a bar to equity, the affair is a travesty, and the way of the transgressor is made plain. This is obviously the effect of holding that the waiver of rights cognizable by the court of law was also a waiver of rights of which such court could take no cognizance.

If the broad claim be made that the court of law had established that the policy of insurance was for all purposes the only contract between the parties, or that its judgment so conclusively embodied all the rights of the parties that none could be elsewhere established or otherwise enforced, the answer is

that such a power did not reside in the court of law. If it were not that it would be *dictum,* there is a temptation to add that a court of law can never say that any writing so perfectly expresses the mind of the parties as to deprive a court of equity of its jurisdiction in those respects wherein its jurisdiction is exclusive. The order that has been brought here gives, as it seems to me, some such illicit weight of the legal judgment obtained by the defendant, and, by failing to note the distinction between the policy of insurance and the contract between the parties, has applied to the latter a judicial rule that at best could affect but the former. This fundamental error has resulted in an inequitable treatment of the complainant's case. It is now clear beyond any doubt that from the defendant's default there resulted to the complainant an election to avoid all liability under its policy by standing on its legal rights, or, upon the other hand, to recognize its liability to the extent that it had agreed to assume it, which was its equitable right. By its offer to pay the proportionate part of the defendant's loss, together with the unearned premium and the cancellation of its policy, the complainant elected to take the equitable course, thereby abandoning all of its legal defences. Its present grievance is that its election to do equity, and the fact that it has done equity, are the grounds upon which it is denied a hearing in equity. Obviously this is the complainant's plight, which is the same now as when it filed its original bill. The equitable phase of its case has never been heard, and remains to be worked out upon the lines indicated by the former opinion in this court, just as if the ineffectual episode of the legal trial had never been interposed. This is the equitable view of the complainant's position, and to this end the order appealed from must be reversed.

It may be well to add, in the interest of clarity, that these views are based upon the idea that the remedy of the complainant is not by a reformation of its policy of insurance, but by the enforcement of its contract as binding upon the defendant, under the maxim that equity regards that as done that ought to have been done, and that the jurisdiction thus invoked does not rest upon mistake in its technical acceptation, but rather upon fraud in equity as distinguished from legal fraud. Upon

this equitable fiction of fraud, and not upon actual fraud or a strained definition of mutual mistake, the jurisdiction of the court of equity may apparently be rested, unless, upon final hearing, a different state of the proofs compels a different result. For present purposes it is enough to say that the order of the chancellor, sustaining the defendant's demurrer, must be reversed, in order that the cause may proceed towards a hearing upon its merits.

*For reversal*—VAN SYCKEL, DIXON, GARRISON, COLLINS, GARRETSON, HENDRICKSON, VROOM—7.

*For affirmance*—THE CHIEF-JUSTICE, FORT, PITNEY, ADAMS, VREDENBURGH—5.