Argued and submitted December 10, 1979, affirmed in part; reversed in part and remanded April 14, reconsideration denied May 22, petition for review denied July 8, 1980 (289 Or 337)

McHENRY,
*Respondent,*

*v.*

SMITH,
*Appellant.*

(No. 78-3031, CA 14094)

609 P2d 855

[813]

Joseph G. McKeever, Eugene, argued the cause and filed the brief for appellant.

Darst B. Atherly, Eugene, argued the cause for respondent. With him on the brief was Thwing, Atherly & Butler, Eugene.

Before Joseph, Presiding Judge, Richardson, Judge, and Schwab, Chief Judge.*

JOSEPH, P.J.

---

*Schwab, C.J., *vice* Lee, J., deceased.

## JOSEPH, P.J.

Plaintiff and defendant, both of whom were unmarried, lived together from August, 1973, to August, 1977. Plaintiff brought this action for damages in two counts, both for breach of contract.

Her first count alleged that in August, 1973, she and defendant "entered into an oral agreement" by which they "agreed to pool their resources to establish a home and to live together as husband and wife." As a part of that agreement she promised to "work and support defendant and to render her services as companion, cook, homemaker, gardener, and housekeeper to him." In return, he "agreed to write a German textbook or teaching manual and upon reestablishing his professional career, to work and support plaintiff and to render his services as companion, advisor, caretaker and counselor to her." She further alleged that she fulfilled her obligations under the agreement, but that since August, 1977, when defendant left the parties' residence, he "has not lived with plaintiff, or supported her, or rendered services as companion, advisor, caretaker, and counselor, to her damage."

The second count alleged that "from time to time between August, 1973, to August, 1977, defendant promised plaintiff he would repay her for her support and services once he became reestablished in his profession," but that when he obtained employment in his field, he "failed and refused to repay plaintiff for the support and services she rendered him from August, 1973, to August, 1977." The complaint prayed for damages of $35,000.

Defendant appeals from a judgment entered on a jury verdict awarding plaintiff $16,000 damages. He assigns as errors the trial court's failure to allow his "demurrer and alternative motion to try this case as a suit in equity" and the court's denial of his motion for a new trial based on the same grounds asserted in the pre-trial matter. His contention is that the case should

have been tried in equity rather than as a contract action at law. Defendant also maintains that the trial court improperly permitted plaintiff to testify from a summary of her financial records without requiring production of those records; and he asserts that the trial court erred in refusing to give his requested jury instructions on his counterclaim for conversion.

In *Latham v. Latham*, 274 Or 421, 547 P2d 144 (1976), the court held that express agreements between two unmarried persons which contemplated "all the burdens and amenities of married life" were valid. Such contracts are no longer considered void as against public policy. *Compare Traver v. Naylor*, 126 Or 193, 268 P 75 (1928). In *Latham* the trial court sustained defendant's demurrer to the complaint, and on appeal the court reversed. However, the issue of the type of relief to be afforded was not considered. ∎

Plaintiff, basing her action in contract on the *Latham* precedent, sought to enforce promises regarding the economic arrangements for their cohabitation. This case, therefore, is unlike other recent cases which have dealt with the question of the distribution of property following the termination of a non-marital relationship. It is not a partition suit or a suit seeking the division of jointly owned property. Unlike *Beal v. Beal*, 282 Or 115, 577 P2d 507 (1978), where the court decided the principles to be applied in determining the property rights of the parties in property accumulated while they were living together unmarried,[1] plaintiff does not assert a right to the accumulated property.

---

[1] The court in *Beal* stated:

"We believe a division of property accumulated during a period of cohabitation must be begun by inquiring into the intent of the parties, and if an intent can be found, it should control that property distribution. While this is obviously true when the parties have executed a written agreement, it is just as true if there is no written agreement. The difference is often only the sophistication of the parties. Thus, absent an express agreement, courts should closely examine the facts in evidence to determine what the parties implicitly agreed upon." 282 Or at 122.

Neither does she seek a declaration that she and defendant are joint and equal owners of property acquired during the relationship. *Rissberger v. Gorton*, 41 Or App 65, 597 P2d 366, *rev den* (1979); *see*, Annot, 31 ALR2d 1255.

In *Marvin v. Marvin*, 18 Cal 3d 660, 557 P2d 106, 134 Cal Rptr 815 (1976), the court concluded that an express contract, not based on illegal consideration, entered into by two non-marital "partners" regarding their earnings, property, or expenses can be enforced. The court stated:

> "In summary, we base our opinion on the principle that adults who voluntarily live together and engage in sexual relations are nonetheless as competent as any other persons to contract respecting their earnings and property rights. Of course, they cannot lawfully contract to pay for the performance of sexual services, for such a contract is, in essence, an agreement for prostitution and unlawful for that reason. But they may agree to pool their earnings and to hold all property acquired during the relationship in accord with the law governing community property; conversely they may agree that each partner's earnings and the property acquired from those earnings remains the separate property of the earning partner.[10] So long as the agreement does not rest upon illicit meretricious consideration, the parties may order their economic affairs as they choose, and no policy precludes the courts from enforcing such agreements.
>
> "* * * * *

---

"[10.] A great variety of other arrangements are possible. The parties might keep their earnings and property separate, but agree to compensate one party for services which benefit the other. They may choose to pool only part of their earnings and property, to form a partnership or joint venture, or to hold property acquired as joint tenants or tenants in common, or agree to any other such arrangement. (*See* generally Weitzman, *Legal Regulation of Marriage: Tradition and Change* (1974) 62 Cal L Rev 1169.)"

In the instant case the parties lived together for four years without marrying; their conduct appears to prove, at least in general, the terms of the contract.

They pooled their income, personal property and savings to meet day-to-day expenses. Both parties collected unemployment benefits for approximately one and a half years. Plaintiff found employment in late 1974 that lasted through the parties' separation in August, 1977. Defendant worked at a few temporary jobs, but had no steady employment. He wrote a German textbook during this period, which he hoped would be published and lead to a teaching position. Following publication of the book in 1977 and his obtaining employment in his field, defendant left the residence.

The real property acquired during the period of cohabitation was taken in defendant's name. In February, 1978, after he decided the relationship was to be terminated, he deeded to plaintiff a one-half interest in the property, and the parties made plans to sell and divide the proceeds equally. Shortly thereafter plaintiff decided against that plan and brought this action.[2]

The parties chose to regulate their lives and affairs by agreement. They had a right to do that, and the

[2] Apparently the court ordered a partition of the parties' real property in a contemporaneous suit. The judge told the jury:

"Now, the Court feels obligated to bring to your attention a circumstance not yet known to you in the case and that is that there are actually two cases being tried simultaneously, the one that you're hearing and, then, the companion case and consolidated to it is what's called a partition suit, which I have been trying. It's an equitable proceeding and, therefore, it is decided by a Court rather than with the aid of a jury. I'm obligated to indicate to you that in that connection, and in that lawsuit, that type of a case, the parties who own a piece of property together seek to have it—one of them seeks to have it sold and the proceeds of the sale, after deducting the cost of sale, to be divided equally between them, since it is alleged they each own an undivided half interest.

"The Court, in that suit, will be allowing that relief and will order the partition of that property that way, in other words, it will be ordered sold in the manner provided by law. After deducting the cost of sale the proceeds will be divided equally. I felt that it was important that you know that because in your deliberations, whatever else occurs to you as to whether or not to award a money figure in favor of one party as against the other one in this case, you should bear in mind that lurking in the background is what I'm going to do on that case and that the parties will be in that posture, at least, money wise in relation to this whole affair."

contract was enforceable. If the contract was breached by one of the parties, the other party was entitled to seek the relief obtainable at law. Plaintiff's action on the contract was properly brought as an action at law.

Defendant contends the trial court improperly permitted plaintiff to testify as to her income and financial contribution to the household from a summary of her financial records without requiring production of those records. ORS 41.640(1)(e). In *Shepherd v. Hub Lumber Co.*, 273 Or 331, 349, 541 P2d 439 (1975) the court stated:

> "*** In order for a 'summary' of accounting records to be admissible, all of the original records which set forth the facts and figures which are the basis for such a 'summary' must be produced in court for inspection by the opposing party for the purpose of verifying the accuracy of the 'summary.' See ORS 41.640(1)(e); McCormick on Evidence 2d 564, § 233 (1972). ***"

Following defendant's objection and a colloquy between court and counsel, the court made available for defendant's inspection all of plaintiff's financial records. He was therefore in a position to check the accuracy of her summary and her computation. We conclude that the trial court did not err in allowing plaintiff to testify from the summaries of her financial records.

Finally, defendant assigns as error the refusal of the trial court to give the following instructions, which were separately requested:

> "Under the defendant's second counterclaim if you find that the parties were co-owners of all or any of the personal property, and if you find that the plaintiff has denied defendant the use or possession of any or all of this personal property, then you should find in the defendant's favor.
>
> "If you find in defendant's favor in his second counterclaim, then you should award damages to defendant in the market value of the property at the time the plaintiff refused to allow defendant the right to possession of the property."

[819]

Defendant's counterclaim alleged that plaintiff converted certain personal property which was accumulated from joint purchases during the period of cohabitation.[3] The evidence shows that personal property which was purchased from their pooled resources was retained by plaintiff. While she permitted him to return to the residence at the termination of the relationship to pick up "his" personalty, she was otherwise in exclusive possession of the residence and had complete control over their accumulated personalty.[4]

In *Rosenau v. Syring*, 25 Or 386, 35 P 845 (1894), the court stated the rule applicable to actions between co-owners (tenants in common) for conversion of personal property:

" '*** The general rule is that one tenant in common of chattels cannot maintain an action of

---

[3] In his counterclaim, defendant alleged that:

"Defendant and plaintiff are tenants in common of the following described personal property, valued as listed:

| "Sony color television | $530.00 |
| Fisher wood stove | 300.00 |
| Snapper power mower | 210.00 |
| Technics SL-23 turntable | 140.00 |
| Shure V-15 Type III Cartridge | 60.00 |
| Paul Neevel photograph | 50.00 |
| Craftsman electric drill press and bits | 50.00 |
| Craftsman power saw | 50.00 |
| Record albums | 100.00 |
| Ohaus beam scale | 70.00 |
| Splitting maul | 15.00 |
| Antique plant stand | 20.00 |
| TOTAL | $ |

"Since on or about June 21, 1978, defendant has been entitled to the use and possession of the personal property, but plaintiff has denied defendant any access to the property and has converted the property to her exclusive possession and control.

"III.

"As a result of plaintiff's actions, defendant has been damaged in the amount of $382.50, representing the value of his one-half undivided interest in the property."

The television was later deleted from the list. The claimed damage was amended to read "$532.50."

[4] Plaintiff changed the locks on the entrances to the residence; defendant was not permitted entry.

trover against his cotenant, because the right of possession lies at the foundation of the action, and the one is as much entitled to the possession as the other. But where one tenant in common, denying the right and title of his cotenant, and claiming the exclusive ownership in himself, applies the joint property to his own exclusive use, it will amount to a conversion, and enable his cotenant to support trover against him therefor (citing cases).' " 25 Or at 389.

Because the jury could have found that the items of personal property retained by plaintiff were owned in common and that plaintiff exercised exclusive control and possession, the first of the requested instructions on the defendant's counterclaim for conversion should have been given. *Remington v. Landolt*, 273 Or 297, 309, 541 P2d 472 (1975); *Rosenau v. Syring, supra.* However, the requested instruction on the measure of damages was clearly incorrect in that it says that if there was a conversion defendant would be entitled to recover the whole value of the common property. He would only be entitled to the value of his interest in the property. *See Palmer v. Protrka*, 257 Or 23, 476 P2d 185 (1970). The second instruction was properly refused. Nonetheless, the failure to give the first instruction was error requiring a new trial on the counterclaim only.[5]

Affirmed in part; reversed in part and remanded.

---

[5] We note that, aside from paraphrasing the pleading, the court gave no instructions at all on the counterclaim. Defendant's exception went only to the two requested instructions.