179 N.J. Super. 36 (1981)
430 A.2d 251
ROSE K. CROWE A/K/A ROSE K. DE GIOIA, PLAINTIFF-RESPONDENT,
v.
SERGIO DE GIOIA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 27, 1981.
Decided May 5, 1981.
*39 Before Judges MICHELS, KOLE and ARD.
Carl J. Palmisano argued the cause for appellant (Palmisano & Goodman, attorneys; Scott J. Marum on the brief).
Anthony B. Vignuolo argued the cause for respondent (Borrus, Goldin & Foley, attorneys; Anthony B. Vignuolo and Martin S. Goldin, on the brief).
PER CURIAM.
Plaintiff, an unmarried woman, instituted an action against defendant, with whom she had cohabited for a long period of time, alleging a breach of an express agreement that "he would take care of her and support her for the rest of her life, and that he would share with her his various assets." The gravamen of her complaint appears to be identical to the type of agreement which first came to public attention in Marvin v. Marvin, 18 Cal. 3d 660, 134 Cal. Rptr. 815, 557 P.2d 106 (Sup.Ct. 1976), and was declared enforceable by our Supreme Court in Kozlowski v. Kozlowski, 80 N.J. 378 (1979).
After issue was joined plaintiff moved for and secured an interlocutory order of the trial court which (1) provided $125 weekly support and maintenance to plaintiff pendente lite; (2) required defendant to pay plaintiff's outstanding and future medical, dental, drug and other bills; (3) permitted plaintiff to continue in exclusive use of defendant's dwelling house and required defendant to continue to pay all costs; (4)enjoined defendant from disposing of his assets; (5) awarded a $350 counsel fee and costs in the amount of $120 pendente lite, and (6) allowed for depositions of each party. We granted defendant's application for leave to appeal and stayed the aforementioned order pending our determination.
*40 Defendant argues that the trial judge lacked jurisdiction to order pendente lite support or counsel fees. We agree. The order in question provides plaintiff with interim relief pending resolution of her cause of action against defendant. The cause of action is based on an express agreement for support. Kozlowski v. Kozlowski, supra, does not afford cohabiting parties the status and rights which would emanate from a marriage. The relief afforded parties in an action of this nature is strictly limited to damages resulting from a cause of action in contract.
Plaintiff is not entitled to alimony or equitable distribution. Alimony may be awarded only in actions for divorce or nullity, and equitable distribution is awarded only in actions for divorce. N.J.S.A. 2A:34-23, et seq. [Kozlowski v. Kozlowski, supra, 80 N.J. at 383]
Moreover, the court went on to say:
To dispel any misunderstanding, we emphasize that our decision today has not judicially revived a form of common law marriage which has been proscribed in New Jersey since 1939) by N.J.S.A. 37:1-10. We do no more than recognize that society's mores have changed, and that an agreement between adult parties living together is enforceable to the extent it is not based on a relationship proscribed by law, or on a promise to marry. [At 387].
Thus, since our Supreme Court has already categorically mandated that plaintiff, in this type of action, is not entitled to alimony, we see no basis to allow pendente lite "support and maintenance" which we deem another name for alimony. In addition, we find no basis for the other collateral relief which was made part of the interlocutory order.
As we have indicated, in the case before us plaintiff alleges an express agreement made by defendant to support her for life. The agreement, if one exists, is by adult nonmarital partners. Plaintiff seeks damages flowing from defendant's alleged breach of contract. Consequently, plaintiff's action on the contract is properly an action at law. R. 4:3-1(a)(1) provides, in pertinent part, that:
... [I]f the plaintiff's primary right or the principal relief sought is equitable or probate in nature, he shall bring the action in the Chancery Division.... All other actions in the Superior Court shall be brought in the Law Division. ...
[Emphasis supplied]
*41 An action on a debt allegedly due under a contract is an action of a traditionally legal character. Dairy Queen v. Wood, 369 U.S. 469, 477 82 S.Ct. 894, 899, 8 L.Ed.2d 44 (1962). "A construction of [a] contract and a determination of the rights of the parties thereunder is assuredly within the province of a court of law." Ewing Tp. v. Trenton, 137 N.J. Eq. 109, 111 (Ch. 1945). Accord, Government Employees Ins. Co. v. Butler, 128 N.J. Super. 492, 496 (Ch.Div. 1974). "Generally speaking, breach of contract gives rise to an action for damages. When, but only when, that remedy is inadequate, the injured party may sue in equity." Sullivan v. Margetts, 9 N.J. Super. 189, 193 (App.Div. 1950). See, also, Regan v. Lenkowsky, 137 F. Supp. 133, 140 (D.N.J. 1956). Our Supreme Court, in Kozlowski v. Kozlowski, supra, 80 N.J. at 388-389, found money damages to be entirely adequate in remedying a nonmatrimonial partner's breach of his contract to provide lifetime support to an aggrieved partner.
Here, the primary relief sought is legal and the relief can and should be obtained in the Law Division. The distinction between law and equity has been set out in Massari v. Einsiedler, 6 N.J. 303.
Under the accepted practice prior to the adoption of the 1947 Constitution a defendant who had unsuccessfully defended a contract action in a law court could then apply to the Chancery Court for reformation of the contract. The Commercial Union Assurance Co. v. N.J. Rubber Co., 64 N.J. Eq. 338 (E. & A. 1902). Likewise, a plaintiff who had prosecuted an action on a contract to judgment which was rendered for the defendant was not precluded from thereafter seeking reformation of the contract in the Chancery Court. Knight v. Electric Household Utilities Corp., 133 N.J. Eq. 87 (Ch. 1943); affirmed, 134 N.J. Eq. 542 (E. & A. 1943). The reason for the intercession by the equity courts was to prevent the injustice which sometimes resulted from the invulnerability of written instruments in a law court when such instruments did not express the actual intent of the parties but were unassailable in the law court because of the parol evidence rule. The basis for the equitable relief of reformation was the inadequacy of the remedy at law. Knight v. Electric Household Utilities Corp., supra. Under our present court structure we have a Superior Court, which has original general jurisdiction throughout the State in all causes. It is divided into a Law Division and a Chancery Division for the trial of causes. Where adequate relief can be obtained in the Law Division, there is no need for intercession by the Chancery Division since the entire controversy can be determined in the Law Division in one and the same suit. The furnishing of complete relief in one court has the design of the unified court structure effectuated by the 1947 Constitution. *42 Our present judicial system is similar to that which is generally referred to as the "reformed procedure, wherein legal and equitable causes of action, legal and equitable defenses, and legal and equitable remedies may be united and determined by the same judgment. See Pomeroy's Equity Jurisprudence, (5th ed. 1941), vol. 1, § 84, p. 110; 45 Am.Jur., Reformation of Instruments, § 90, p. 639. [At 308-309]
Any contractual claim for equitable relief, for instance, quantum meruit, is an alternative request for relief subject to the determination of a legal right, i.e., the express contract. See C.B. Snyder Realty Co. v. Nat. Newark, etc., Banking Co., 14 N.J. 146, 162-163 (1953), and Moser v. Milner Hotels, Inc., 6 N.J. 278, 280-281 (1951), holding that an express contract excludes an implied one. Likewise, the equitable remedy of specific performance requires a clear, definite and precise understanding of the terms of the contract before enforcement. Hollister v. Fiedler, 30 N.J. Super. 203, 210 (App.Div. 1954), mod. and aff'd 17 N.J. 239 (1955). The claim in the instant case, based on allegations of an oral agreement, falls short of this standard. Moreover, it is available only when the remedy at law is inadequate. Fleischer v. James Drug Stores, 1 N.J. 138, 146-147 (1948); Centex Homes Corp. v. Boag, 128 N.J. Super. 385, 393 (Ch.Div. 1974). Therefore, the case is properly brought in the Law Division. See Eckerd Drugs of N.J. v. S.R. 215, Rite-Aid, 170 N.J. Super. 37, 41-42 (Ch.Div. 1979).
In accord with the foregoing conclusion is McHenry v. Smith, 45 Or. App. 813, 818, 609 P.2d 855, 858 (Ct.App. 1980). McHenry held that a contract action between two unmarried parties establishing economic arrangements for cohabitation is properly brought as an action at law. The court noted that:
The parties chose to regulate their lives and affairs by agreement. They had a right to do that, and the contract was enforceable. If the contract was breached by one of the parties, the other party was entitled to seek the relief obtainable at law. Plaintiff's action on the contract was properly brought as an action at law. [Id.]
Thus, because the parties' relationship is recognized as contractual rather than spousal, their cause of action is fairly heard in the law courts.
*43 Our conclusion that this is an action at law lends emphasis to the argument that plaintiff's cause of action precludes equitable relief. Our dissenting colleague recognizes that matrimonial law cannot serve as a basis for awarding the type of preliminary relief granted by the court below. He simply states that the trial court's action was correct based on "settled equitable principles relating to preliminary relief in emergent situations requiring the preservation of the status quo and the prevention of irreparable harm, ...." In doing so, there appears to be a determination that the plaintiff will ultimately succeed: "In my view, the record supports the conclusion that a prima facie case of probable successful ultimate relief under Kozlowski has been established by plaintiff." We must again disagree. The record is far too sparse to predict the ultimate successful party. The answer filed by defendant and the "factual history" in his brief would suggest a sharp factual dispute on critical issues which precludes prognostication of the outcome.
We are constrained to disagree with our dissenting colleague's innovative approach in granting preliminary relief before proof is adduced as to the exact nature of the relationship between the parties as well as the existence of the alleged agreement. The record before us does not allow us to agree with his conclusion:
... [T]here is no reasonable alternative remedy in an emergent situation.... The existence of the new cause of action calls for the creative hand of equity to assure its proper implementation where necessary. See State v. East Shores, Inc., 154 N.J. Super. 57, 64 (Ch.Div. 1977), mod. and aff'd 164 N.J. Super. 530 (App.Div. 1979); Roach v. Margulies, 42 N.J. Super. 243, 246, (App.Div. 1956).
In Hague v. Warren, 142 N.J. Eq. 257 (E. & A. 1948), the court said:
It is sometimes said that the grant of equitable relief is a matter of grace. If by "grace" is meant "favor," such may have been the rule when Chancery was incubated. But under constitutional guarantees of equal protection and due process of law, it can hardly be supposed that the grant or denial of equitable relief may rest upon fancy or favor. All litigants in equity are entitled to the same result in identical situations, and the claim to that result has the statute of a right. "For if the constitutional provision `due process of law' or as it is sometimes called, `the law of the land' or, as the English phrase it, `the rule of law,' means anything, it should mean equality in the determination of the rights of those affected." Grobholz v. Merdel Mortgage Investment Co. (Court of Errors and Appeals, 1934), 115 N.J. Eq. 411, 415 [at 262].
*44 We see no basis to favor the plaintiff in this action before resolution of the factual dispute. We know of no better statement apropos of this situation than that contained in Temple v. Clinton Trust Company, 1 N.J. 219 (1948) where the Supreme Court, in charting the future of the then new judicial system, stated:
The rights of the parties are the same in equity as at law. Courts of equity may not "depart from all precedent and assume an unregulated power of administering abstract justice at the expense of well-settled principles." Heine v. The Board of Levee Commissioners, [86 U.S. 655, 19 Wall. 655,] 22 L.Ed. 223 (1873). Equity has no jurisdiction over that "large class of obligations called imperfect obligations, resting upon conscience and moral duty only, unconnected with legal obligations.... Generally its jurisdiction depends upon legal obligations, and its decrees can only enforce remedies to the extent and in the mode by law established." Rees v. Watertown, 86 U.S. 107, 19 Wall. 107, 22 L.Ed. 72 (1873). [at 227-228]
In sum, we cannot, on one hand, recognize plaintiff's claim as a nonmarital contract action and then, on the other hand, proceed to clothe plaintiff with a panoply of pretrial relief which our courts have long recognized as emanating from traditional marriage law.
Finally, in addition to our determination above, we do not believe this to be a matrimonial action within the definition of R. 4:75. The language of the rule clearly deals with actions involving marriage or the nullity of marriage and all of the peripheral claims "between spouses and former spouses." Consequently there is no basis to allow counsel fees pursuant to R. 4:42-9(a)(1). See Pressler, Current N.J. Court Rules, Comment R. 4:42-9(a)(1) (1981). The trial court's order of September 10, 1980 granting plaintiff pendente lite relief is vacated. The matter is remanded for trial in the Law Division.
Reversed and remanded.
KOLE, J.A.D. (dissenting).
The complaint in this matter seeks, among other things, the type of relief for breach of a contract to support plaintiff for life that was judicially sanctioned for the first time in this State *45 by Kozlowski v. Kozlowski, 80 N.J. 378 (1979). That case recognized a new status which would warrant breach of contract damages  a relationship between adult unmarried persons living together and engaging in sexual relations, where there is an agreement by the man to support the woman for life or some lesser period of time. It held, predicated on a change in society's mores, that such an agreement was enforceable in order to effectuate the reasonable expectations of the parties. It further held that the plaintiff woman was entitled to damages for a violation of such a contract by way of a one-time, lump-sum judgment in an amount predicated upon the present value of the reasonable future support the man promised to provide. It indicated that the lump-sum payment could be ordered by the trial court to be paid in installments, a somewhat unusual provision of a damage judgment for breach of contract except where a continuing cause of action is involved  e.g., a breach of contract for payment of money in installments. Cf. R. 4:42-7; Leslie Blau Co. v. Alfieri, 157 N.J. Super. 173, 209-211 (App.Div. 1978), certif. den. 77 N.J. 510 (1978).
However, Kozlowski specifically held that it was not reviving common law marriage or a cause of action based on breach of promise to marry. Hence, there is no doubt that any provision of law authorizing pendente lite alimony, support or other relief in matrimonial actions cannot serve as a predicate for awarding any part of the preliminary relief granted by the court below. That authority, if it exists, must be found elsewhere.
I find the basis for part of the pendente lite relief granted, as did the trial judge, in the application to the facts of this case of settled equitable principles relating to preliminary relief in emergent situations requiring the preservation of the status quo and the prevention of irreparable harm, after balancing conveniences and the interests of the parties, until the final determination of the litigation involved.
The facts developed by plaintiff's verified complaint, filed in May 1980, and in her certification in support of her motion for *46 pendente lite relief  not in any wise denied under oath by defendant on the record before us  establishes the following: The parties had lived together for 20 years, from February 1960 to February 1980, as husband and wife although never legally married. Plaintiff's seven children from a prior marriage, which ended in divorce, lived with them as a family unit. Defendant supported plaintiff and her children during this entire period. Plaintiff provided defendant with substantial services, keeping house and helping him in his business. From 1967 until February 1980, when defendant left plaintiff announcing his intention to marry someone else, they lived together at a one-family residence owned by defendant. Plaintiff is still living in the house with a disabled 27-year-old son. Defendant had expressly agreed that he would take care of and support plaintiff for the rest of her life. During this entire 20-year period plaintiff has been entirely economically dependent on defendant for all her needs, maintenance and support. Since February 1980, when defendant left the household, he has provided plaintiff only minimal and inadequate support, even though he is wealthy and has substantial assets. Plaintiff has no significant assets and no present means of supporting herself. In my view, the record supports the conclusion that a prima facie case of probable successful ultimate relief under Kozlowski has been established by plaintiff.
The pendente lite order was entered on September 10, 1980. Among other things, it required defendant to pay $125 a week support to plaintiff,[1] to pay for medical expenses,[2] to refrain from removing plaintiff and her son from the house in which they had resided and to pay all expenses connected therewith and not to remove any items therefrom. On the record before *47 us I consider the medical and house expenses as part of the minimal support required by plaintiff. It also directed defendant to pay the costs of depositions to be taken by both parties and the $120 court costs incurred by plaintiff. It is in connection with the relief thus granted pending the disposition of the case on its merits with which I am concerned.
I do not agree with the majority opinion that, since the present action involves the breach of an express agreement to support which is enforceable by a damage remedy under Kozlowski, it must be maintained as an action in the Law Division.
The question of the proper trial forum apparently was not raised in Kozlowski. Nevertheless, the Supreme Court there entertained, without comment, an appeal from the Chancery Division and it remanded the matter for such further proceedings as the Chancery Division judge, "in his sound discretion determines should be held on the issues of damages and [the method] ... of payout" of the lump-sum judgment. I believe that this type of matter properly belongs in the Chancery Division since, although the ultimate remedy is damages, in effect the complaint seeks specific performance of a unique type of agreement to support and the enforcement of newly judicially created rights impliedly recognized in Kozlowski as basically equitable in nature. See Soper v. Cisco, 85 N.J. Eq. 165, 176 (E. & A. 1915); Giacobbi v. Anselmi, 18 N.J. Super. 600, 621 (Ch.Div. 1952); Reeves v. Morgan 48 N.J. Eq. 415, 428-431 (Ch. 1891). Compare the remedy of specific performance to a vendor of real property even though he is suing for the purchase price. Hopper v. Hopper, 16 N.J. Eq. 147, 148 (Ch. 1863). See, also, Centex Homes Corp. v. Boag, 128 N.J. Super. 385 (Ch.Div. 1974).
The Oregon case cited by the majority opinion, McHenry v. Smith, 45 Or. App. 813, 609 P.2d 855 (Ct.App. 1980) merely held that plaintiff there was entitled to maintain an action at law for breach of the contract to support. I note that it was defendant in that case who had contended that the matter should have been tried in equity. It does not necessarily follow that Oregon *48 would preclude such a plaintiff from maintaining the same cause of action in equity, since there may be concurrent jurisdiction with respect thereto. Conceivably there may be such concurrent jurisdiction in this State. But even if, as determined by my colleagues, only the Law Division may entertain this action, faced with the extraordinary facts in this case, I suggest that the Law Division judge would have the authority to grant the preliminary relief here involved. Cf. Rolleri v. Lordi, 146 N.J. Super. 297, 301-302 (App.Div. 1977); S. v. H.M., 111 N.J. Super. 533, 557 (App.Div. 1970). See, generally, Pressler, Current N.J. Court Rules (1981), Comment R. 4:3-1.
Obviously the granting of the pendente lite relief here implicated should not be a matter of routine in cases of this nature. It should be afforded only in exceptional situations. Considerations such as those governing the issuance of temporary restraints should be applied. I think that the instant case presents such extraordinary circumstances that granting the relief hereafter discussed is justified. I cannot agree with my colleagues that it constitutes such an innovative approach as to "rest on fancy or favor" so as it to take it outside of equitable jurisdiction.
I add that the sparseness of the record, relied on by the majority opinion as precluding a present evaluation of plaintiff's ultimate success, essentially is a result of defendant's failure to supply verified facts, as opposed to plaintiff's verified complaint and certification, to create any real factual dispute in that respect. I do not agree that an unverified denial and the factual history in defendant's appellate brief suffice to create "a sharp factual dispute on critical issues which precludes prognostication of the outcome."
I agree with the majority opinion that there is no basis in the record or in law for restraining defendant from transferring or disposing of his assets and requiring defendant to pay counsel fees of $350. As to counsel fees, see R. 4:42-9(a)(1).
*49 The unique policy underlying the denial of counsel fees except as expressly provided in R. 4:42-9 bars the award of pendente lite attorney fees in this case. But, notwithstanding the general rule that each litigant should bear his own expenses in prosecuting his action (see Sunset Beach Amusement Corp. v. Belk, 33 N.J. 162, 167 (1960)), the same rigidity involved in allowing counsel fees is not necessarily applicable to the award of costs. See U.S. Pipe, etc. v. U.S. Steelworkers of America, 37 N.J. 343, 355-356 (1962). For the reasons hereafter set forth as justifying the allowance of temporary support and the like in this case, the pendente lite allowance to plaintiff of $120 costs and the cost of depositions constituted an appropriate exercise of the trial court's discretion. It is true the matrimonial cause rule, R. 4:79-4(a), would permit pendente lite costs apparently even as to depositions and that there is no similar rule authority in the nonmatrimonial area. Thus, R. 4:14-6(c) requires that a party taking a deposition bear the cost thereof. However, under the unusual circumstances of this case, in order that the conduct of this litigation be managed justly, that rule relating to costs should be relaxed, and even absent a specific rule permitting the $120 costs pendente lite, the interest of justice should warrant that measure of relief. R. 1:1-2.
It is evident from the trial judge's determination that he relied on his equitable authority in granting the preliminary relief in order to preserve the status quo pending final hearing, predicated on the likelihood that if it did not give such relief, this economically dependent plaintiff would be immediately and irreparably harmed. In so doing he properly weighed the conveniences of and harm to the respective parties. See Sunbeam Corp. v. Windsor-5th Ave., 14 N.J. 222, 233 (1953); Naylor v. Harkins, 11 N.J. 435, 446-447 (1953); Christiansen v. Local 680 of the Milk Drivers, etc., 127 N.J. Eq. 215, 219-220 (E. & A. 1940); Sosanie v. Pernetti Holding Corp., 115 N.J. Super. 409, 414-415 (Ch.Div. 1971); Marjer v. Layfmen, 140 N.J. Eq. 68, 73-75 (Ch. 1947); Isolantite, Inc. v. United Electrical R. & M. Workers, 130 N.J. Eq. 506, 514 (Ch. 1941), mod. on other gds. 132 *50 N.J. Eq. 613 (E. & A. 1942). See, also, Continental Group, Inc. v. Amoco Chem. Corp., 614 F.2d 351, 357 (3 Cir.1980).
The preliminary restraint with respect to plaintiff's eviction from the house is a not unusual exercise of this type of authority; but I do not perceive why the award of minimal support to keep plaintiff off the welfare rolls or minimal costs to permit her to pursue this litigation until the final determination of the matter is likewise not within such inherent equitable jurisdiction. A court of equity should not be foreclosed from acting by lack of precedent or by uniqueness of the problem, especially where, as in the instant case, there is no reasonable alternative remedy in an emergent situation  and this is so particularly where a new cause of action has recently been judicially established. The existence of the new cause of action calls for the creative hand of equity to assure its proper implementation where necessary. See State v. East Shores, Inc., 154 N.J. Super. 57, 64 (Ch.Div. 1977), mod. and aff'd 164 N.J. Super. 530 (App.Div. 1979); Roach v. Margulies, 42 N.J. Super. 243, 246 (App.Div. 1956).
The abrupt cessation of support and threat of eviction from a house in which plaintiff lived with defendant for many years justified a pendente lite order precluding her eviction and defendant's removal of certain items from the house and directing payment of minimal support, as well as the limited litigation costs, until disposition of the case on the merits. Indeed, the reasons given by the judge for affording such relief were adequate to sustain that order, provided it is modified as hereafter set forth. Thus, the judge said:
... there seems to be sufficient evidence for me to at least believe that there was some type of arrangement between the parties. The parties aren't on equal economic footings. It seems quite clear that Ms. Crowe has been living in this residence, that is apparently owned by Mr. DeGioia, and has been for many, many, many years. She [has not worked and] is not gainfully employed at this time, she has not been on Welfare for some eight or nine years. It is quite obvious that Mr. DeGioia is footing the bills in that place or has been throughout this relationship. He has also been providing food and clothing, or what have you [necessities] for this woman, because she has not worked ...

*51 For me to say until there is a contract proven or until I make the final decision, this woman has to starve ... or to throw her out of the house, ... would result in a grave injustice ... Nowhere does Mr. DeGioia tell me he is destitute and he can't afford what the Court ordered. I appreciate the fact... that if [defendant] ultimately wins ... [it may be that] he can never recoup it, and in that sense there may be some irreparable harm, but the far greater harm would result in this Court not providing for the needs of [plaintiff]. I don't think that the order of this Court was an onerous one, economically based on the relative circumstances of the parties. I ordered ... basically the roof expenses and ... a hundred and twenty-five dollars a week.
Now, that is not a great deal of money, it is what I consider to be enough to keep this woman going, and I don't think she is going to live luxuriously on this. I purposely did not attempt, in any way, to use the standard, for example, that she should live in the manner in which she was accustomed, because I think that would be really onerous for [defendant] based on the fact that no final determination has been made as to whether there was an agreement or contract. I am giving her what I believe to be minimal support, enough to keep her alive, or to keep the ship afloat until a final determination is made, based, of course, on the papers, that there seems to me to be at least enough evidence for me to imply there was some type of arrangement between the parties. This is a Court of Equity, and I think I am doing equity.
........
I am making a finding that this woman needs the money, she has no other source of income, she has nowhere else to live ... [S]he is now poverty-stricken again and in destitute circumstances.
Although preliminary relief was not involved therein, the situation in Bak-A-Lum Corp. v. Alcoa Bldg. Prod., 69 N.J. 123 (1976), is instructive. There the court found that an oral exclusive distributorship agreement was terminable only after a reasonable period of time and on reasonable notice. It held that although the defendant was under no strict legal obligation to inform plaintiff that it was about to terminate the distributorship, even though it knew that plaintiff was enlarging its plant on the assumption of the continuation of the business arrangement for the indefinite future, still defendant was required to give at least 20 months' notice of termination. It pointed to the fact that such notice was required as a covenant of good faith and fair dealing implied in every contract, stating that neither party should do anything which would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Id. at 129-130. If Bak-A-Lum, involving *52 a long-time business relationship, determined that a 20-month notice period to terminate was reasonable to protect the plaintiff's interests in not losing profits, the instant case presents a stronger justification for mandating a somewhat similar result, through the use of pendente lite relief, where the issue involves the economic dependence of plaintiff on defendant for sheer subsistence.
The provision of the order prohibiting defendant from removing "any items" from the house appears to be too broad. Moreover, the order should make clear the fact that if plaintiff is ultimately unsuccessful, she may be liable to defendant for the money she receives pursuant to the order.
Accordingly, I would affirm, with the modifications indicated therein, the following portions of the pendente lite order from which this appeal is taken:
(a) Requiring defendant to pay $125 a week support to plaintiff beginning August 25, 1980 (¶ 1 of the order).
(b) Requiring defendant to pay plaintiff's medical expenses (¶ 2 of the order).
(c) Restraining defendant from removing plaintiff or her son from the house at 40 Lewis Street, Perth Amboy, and requiring him to pay all expenses connected with the house (¶ 3 of the order).
(d) Restraining defendant from removing any items from the house required by plaintiff in order to reside therein in the manner that existed prior to defendant's leaving in February 1980 (¶ 4 of the order, as modified).
(e) Requiring defendant to pay costs of $120 to plaintiff and costs of depositions (part of ¶¶ 7 and 9 of the order).
(f) Denying defendant's application to transfer the case to the Law Division (¶ 8 of the order).
(g) Any sums expended by defendant pursuant to this order may be recovered by him from plaintiff, upon order of the trial court, if he is ultimately successful on the merits of this case. (New).
I would reverse those parts of the order that enjoin defendant from in any wise disposing of, etc., any of his assets (all of ¶ 6) and require defendant to pay a $350 counsel fee to plaintiff's attorney (part of ¶ 7).
NOTES
[1] The $125 a week was to commence August 25, 1980. The matter apparently was originally heard July 25, 1980.
[2] This item included outstanding and future medical, dental, podiatry, "opthalmological," eyeglass and drug bills. There is no indication in the record, nor does defendant argue, that any of these are not necessaries.