**Jeanne Brandon ANASTASI, Plaintiff,**

v.

**Joseph ANASTASI, Defendant.**

**Civ. A. No. 81–2486.**

United States District Court,
D. New Jersey.

Feb. 16, 1982.

---

Harvey R. Pearlman, Friedman, Kates & Pearlman, P.C., Rutherford, N. J., for plaintiff.

Marcia L. Mazer, Mazer & Cofsky, Cherry Hill, N. J., for defendant.

## OPINION

DEBEVOISE, District Judge.

### I. *The Pleadings*

Plaintiff, Jeanne Brandon Anastasi, instituted this action in the Chancery Division of the Superior Court of New Jersey, charging that defendant, Joseph Anastasi, has breached his agreement "to provide plaintiff with all of her financial support and needs for the rest of her life".

The complaint alleges that plaintiff met defendant in March, 1970; that she began to date him a year later and lived with him "off and on" for the next four years. The complaint further alleges that in or about January, 1975 plaintiff and defendant entered into an oral contract under which, in exchange for life support, "plaintiff agreed to come live with defendant full-time and be his helpmate, companion, homemaker, housewife and cook". According to the complaint, the parties entered upon the relationship contemplated by the contract; plaintiff ·changed her surname from Brandon to Anastasi, and they continued this arrangement until July, 1980, when defendant forced plaintiff to leave his household and refused to continue to support her. Plaintiff seeks damages, including the reasonable value of her services, attorneys' fees, and such other relief as the Court shall deem equitable and just.

Defendant removed the case to the federal court pursuant to 28 U.S.C. § 1441(a) on the basis of diversity of citizenship. He answered, denying the allegations of the complaint (other than admitting cohabitation "on and off" in Florida) and asserting affirmatively the defenses of the Statute of Frauds and lack of personal jurisdiction over him in New Jersey. Subsequently defendant moved pursuant to 28 U.S.C. § 1404(a) to transfer the action to the United States District Court for the Southern District of Florida. I raised the question whether the case should be remanded to the state court on the ground that it is within the domestic relations exception to federal jurisdiction notwithstanding that there is diversity of citizenship. The parties have briefed and argued that question as well as the motion to transfer.

### II. *Domestic Relations Exception to Jurisdiction*

This is one of a growing number of cases in which a plaintiff who was not married to, but who had lived with, a defendant seeks the payment of money after the termination of the relationship. As in most such cases, the claim is based upon an alleged

agreement, express or implied, entered into by the two parties, *see e.g., Marvin v. Marvin*, 18 Cal.3d 660, 134 Cal.Rptr. 815, 557 P.2d 106 (Sup.Ct.1976). The circumstances involved in these cases have many similarities to traditional domestic relations cases over which federal courts have rejected jurisdiction, and the question presents itself whether these similarities require the federal courts to refrain from hearing this new breed of case.

To resolve this question it is necessary to examine the policies and present limits of the domestic relations exception to federal jurisdiction, *see generally* Hart & Wechsler's *The Federal Courts and the Federal System* (2d ed. 1973), pp. 1189–92.

The leading Third Circuit case upon the subject is *Solomon v. Solomon*, 516 F.2d 1018 (1975). Plaintiff wife sued defendant husband for support payments owing under a separation agreement. Plaintiff was in violation of child visitation provisions of the agreement and defendant had admittedly failed to make payments for support. The District Court granted summary judgment for defendant on the ground that it lacked jurisdiction to adjudicate a cause of action involving domestic relations.

The Court of Appeals reviewed at some length the history and rationale of the doctrine that federal courts will decline to accept jurisdiction of cases involving domestic relations, *see* 516 F.2d at 1021–1024. It set forth the contemporary rationale for this exception to the federal court's jurisdictional powers: " . . . state courts have historically decided these matters and have developed both a well-known expertise in these cases and a strong interest in disposing of them." 516 F.2d at 1025. In *Solomon* the Court noted that state expertise and interest were implicated because custody of children was involved, there was pending state litigation, there was an agreement to litigate in the state courts, and there was the danger that the feuding couple would play one court system off against the other. In those circumstances, the Court held, a district court should dismiss the case for want of subject matter jurisdiction. The Court

noted, however, that "we do not mean to suggest that a separation agreement may never be litigated in the federal courts by parties between whom there is diversity of citizenship". 516 F.2d at 1025.

A sampling of federal cases helps illustrate the limits of the domestic relations exception to federal jurisdiction. In *Zimmerman v. Zimmerman*, 395 F.Supp. 719 (E.D.Pa.1975), decided two weeks after *Solomon*, the Court held that the exception did not apply. There, husband and wife had entered into two written contracts under which the defendant husband agreed to provide financial support for his wife and children. The contracts were incorporated into a subsequent divorce decree. Nine years later plaintiff commenced a diversity action, seeking damages for her ex-husband's alleged breach of those contracts. The Court held that because the dispute involved no child custody questions, no pending state court actions between the parties, and no evidence that the parties were attempting to play one court off against another, *Solomon* did not preclude jurisdiction.

In *Allen v. Allen*, 518 F.Supp. 1234 (E.D. Pa.1981), the District Court applied the "domestic relations" exception to actions concerning marital property which was the subject of a post-nuptial property settlement agreement. Eight actions were pending in the state court between the parties for custody, divorce, alimony, support, maintenance, replevin, and equitable distribution, some or all of which related to the parties' property claims. The Court concluded that the case was one in which the parties were attempting to play one court system off against the other and, consequently, under the criteria set forth in *Solomon*, jurisdiction was lacking.

In *Sutter v. Pitts*, 639 F.2d 842 (1st Cir. 1981), plaintiff wife claimed that defendant husband's violation of a state court custody order infringed upon the exercise of her civil rights. The District Court abstained and dismissed the complaint, relying upon the "domestic relations" exception to jurisdiction. The dismissal was affirmed on the ground that "[a]lthough [plaintiff] has

clothed her complaint in the garb of a civil rights action, we agree with the district court that her claim boils down to a demand for custody of the child". *Id.* at 844.

*Spindel v. Spindel*, 283 F.Supp. 797 (E.D. N.Y.1968), contains a scholarly history and analysis of the domestic relations exception to jurisdiction, questioning whether in reality the issue is one of jurisdiction and urging, in any event, a narrow application of the doctrine. In that case the Court held that notwithstanding the exception it had jurisdiction over a case in which plaintiff wife alleged that defendant husband had fraudulently induced her to marry him and then fraudulently procured a Mexican divorce dissolving the marriage. She sought compensatory and punitive damages and a declaration that the Mexican divorce was invalid. The Court found that there was no question of interference with state policies, for the federal court was being asked to do exactly what a state court would do. That, of course, is true in any domestic relations case brought in a federal court on the basis of diversity jurisdiction, and one is left with the distinct impression that Judge Weinstein, who decided *Spindel*, finds very little rational justification for the exception. On the facts, however, *Spindel* is not inconsistent with *Solomon*. The exercise of jurisdiction in *Solomon* would have involved the federal court in the continuing problem of custody of children. The judgment sought in *Spindel* was for money damages and a declaration of the invalidity of a judgment, traditional remedies which would not require continuing judicial supervision of family affairs.

In *Cole v. Cole*, 633 F.2d 1083 (4th Cir. 1980), the Court suggested a standard for determining whether the domestic relations exception applies. In that case plaintiff husband brought an action against his estranged wife for, among other things, malicious prosecution, abuse of process, arson, and conversion. The District Court dismissed the counts alleging these charges for lack of subject matter jurisdiction. On appeal, the Court concluded that the domestic relations exception was not applicable, stating:

Not all family feuds, however, fall directly into the specialized category of true domestic relations cases (primarily divorce, alimony, child custody and support). A district court may not simply avoid all diversity cases having intrafamily aspects. Rather it must consider the exact nature of the rights asserted or of the breaches alleged.

. . . . .

The duty to abstain from malicious prosecution, from abuse of process, from arson, and from conversion does not arise out of or require, in order to give rise to the duty, a present or prior family relation . . . But since deciding this case would not require the court either to adjust family status or to establish duties under family-relations law or to determine whether or not such duties had been breached, affirming the district court with respect to the absence of subject matter jurisdiction would be significantly and illogically to expand the exception to diversity jurisdiction. The claims asserted could have arisen between strangers, and certainly between people with no marital relationship whatsoever.

633 F.2d at 1088, 1089.

Other illustrative cases dealing with the domestic relations exception are *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212 (6th Cir. 1981) (A federal court does not have jurisdiction to hear an action on a divorce decree when the court would have to explore the parties' personal needs and finances.); *Jagiella v. Jagiella*, 647 F.2d 561 (5th Cir.), *reh. denied*, 654 F.2d 723 (1981) (A federal court has jurisdiction over an action to recover a specific sum which the state court had awarded to the plaintiff for support and alimony arrearages.); *Crouch v. Crouch*, 566 F.2d 486 (5th Cir. 1978) (The domestic relations exception does not preclude jurisdiction over a suit to recover a judgment on a written separation agreement providing specifically for times and amounts of payments.)

Whether the domestic relations exception to jurisdiction is truly a question of jurisdic-

tion or whether it is a form of abstention pursuant to which the federal courts decline to exercise jurisdiction, the foregoing cases suggest the circumstances in which the exception will be applied. Typically it has been applied in situations where the court must delve deeply into family relationships, usually on a continuing basis. Where divorce, alimony, child custody and support for spouse or child are concerned, it is frequently necessary to inquire in great detail into the lives of family members. It is true that divorce may be accomplished in a single decree. However, alimony, custody and support are often, perhaps usually, subject to modification as conditions change; resulting in recurring resort to the courts.

The states have an important interest in these matters. The state courts often have available specialized facilities to assist them in determining the facts, particularly where child custody is involved. There are often specialized courts dealing only with domestic or matrimonial matters. Whatever the theoretical bases for it, there are practical reasons for leaving these kinds of issues involving these kinds of inquiries to the state courts.

### III. *Application of the Exception in the Present Case*

■ It is necessary to apply the foregoing rationale for the domestic relations exception to determine whether a federal court should reject jurisdiction of a suit arising out of the relationship between unmarried persons who had lived together in a manner which had many of the elements of a conventional marriage. I conclude that the exception will apply only if two conditions are met: first, the state exhibits a significant interest in this kind of relationship akin to the state's interest in the marriage and the parent-child relationships; and, second, in order to protect this interest a court must make the same kinds of inquiries that have traditionally brought into play the domestic relations exception.

The relationship in the present case appears to have had its genesis in New Jersey and it appears that the parties lived in this state during a major portion of their years

together. Neither party has suggested that the law of any other state should determine the consequences of their relationship.

It is quite clear from New Jersey cases upon the subject that New Jersey has not given special significance to the phenomenon of unmarried couples. The most that can be said is that the state recognizes and accepts the existence of such a status and will enforce any financial arrangements to which the parties have agreed.

*Kozlowski v. Kozlowski*, 80 N.J. 378, 403 A.2d 902 (1979), dealt with a suit by a woman who had lived with a man for fifteen years, brought up various of his and her children by other marriages and filled the role of a conventional housewife. The trial court found that in order to induce plaintiff to continue living in that manner "defendant expressly agreed to support plaintiff for the rest of her life". After defendant left plaintiff in pursuit of other romantic interests, plaintiff sought to enforce the agreement.

The New Jersey Supreme Court held that "[s]uch agreements by adult nonmarital partners which are not explicitly and inseparably founded on sexual services are enforceable", at p. 385, 403 A.2d 902. It emphasized that the decision was not intended to revive judicially a form of common law marriage previously abolished by statute. The Court was simply enforcing a contract. It recognized that damages were not ascertainable with exactitude, but ruled that the plaintiff in that case was entitled to "a one-time lump sum judgment in an amount predicated upon the present value of the reasonable future support defendant promised to provide, to be computed by reference to her life expectancy as shown by the tables referred to in R.1:13–5", 80 N.J. at 388, 403 A.2d 902.

It might be necessary to go into some of the matters which are relevant in a support action in order to determine the amount of damages to which such a plaintiff is entitled, but it is a one-time inquiry and does not represent a departure from the traditional role of a court in awarding damages in a contract action.

The subsequent case of *Crowe v. DeGioia*, 179 N.J.Super. 36, 430 A.2d 251 (App.Div. 1981), was a suit for damages for breach of an alleged agreement to take care of and support plaintiff for the rest of her life and to share with her his various assets. The Court emphasized that the action was one based strictly on contract and not arising out of the relationship of the parties:

> The cause of action is based on an express agreement for support. *Kozlowski v. Kozlowski, supra,* does not afford cohabiting parties the status and rights which would emanate from a marriage. The relief afforded parties in an action of this nature is strictly limited to damages resulting from a cause of action in contract.

179 N.J.Super. at 40, 430 A.2d at 253.

The trial court in *DeGioia* had taken a different position. Upon plaintiff's motion it had entered an interlocutory order awarding plaintiff weekly support payments *pendente lite,* requiring defendant to pay plaintiff's outstanding medical, dental, drug and other bills, permitting plaintiff the exclusive use of defendant's dwelling, and requiring defendant to continue to pay all costs, enjoining defendant from disposing of his assets and awarding plaintiff a counsel fee *pendente lite.* The trial court treated the action very much as it would have treated a matrimonial action. Notwithstanding a strong dissenting opinion in support of the trial court's ruling, the majority of the Appellate Division held that the trial court lacked jurisdiction to order *pendente lite* support or counsel fees, since the action was simply a contract action for damages.

Had the views of the trial court and of the dissenting opinion on appeal prevailed in *DeGioia,* I would have concluded that the domestic relations exception to jurisdiction should be applied were such an action instituted in the federal court. The state would have evidenced a sufficient interest in the relationship of unmarried couples to have devised legal mechanisms to protect the parties upon dissolution of the relationship. It would be necessary for a court to inquire into the details of the relationship and into the financial circumstances of the parties. It would be necessary to do this on a continuing basis at least during the course of the litigation. This is precisely what the domestic relations exception is designed to avoid.

However, the views of the trial court and of the dissenting opinion on appeal did not prevail in *DeGioia.* Consequently, the present case, which is virtually identical to *Kozlowski* and *DeGioia,* must be viewed as nothing more than a contract action. Neither the interest of the State of New Jersey nor the nature of the Court's inquiry is such as to bring it within the domestic relations exception to jurisdiction. The Court has jurisdiction of the action by virtue of 28 U.S.C. § 1332.

### IV. *Motion to Transfer*

Under 28 U.S.C. § 1404(a), a district court may, "for the convenience of parties and witnesses, in the interest of justice", transfer a civil action to any other district in which the plaintiff might have commenced the action originally. Once having determined that another district is one in which the plaintiff might have commenced an action, a court must analyze the following issues:

> (1) plaintiff's choice of forum; (2) relative ease of access to sources of proof; (3) cost of obtaining attendance of willing witnesses; (4) . . . all of the other practical matters which must be borne in mind in order to expedite the trial of a case with maximum ease and minimum expense; (5) the responsibilities and difficulties of court administration; and (6) the desirability, in federal cases, of a determination of state law by a federal court located in the same state.

*Azriel v. Frigitemp Corporation,* 397 F.Supp. 871, 873 (E.D.Pa.1975).

Applying these criteria, defendant asserts several reasons why Florida is a more appropriate forum. He claims that he is a Florida resident and that he conducts his business there. Yet, plaintiff was unsuccessful in more than twenty attempts to

serve the defendant in Florida. Defendant was ultimately served at his residence in Ship Bottom, New Jersey. In support of transfer, defendant also points out that plaintiff currently resides in the Southern District of Florida. However, this fact does not diminish the importance of plaintiff's choice of forum. In addition, plaintiff states that she was a California resident when she began this action, and that her employment will require another change of residence in the near future.

Finally, defendant states that he will call three specific witnesses, all of whom reside in Florida, who will testify about the nature and details of defendant's relationship with plaintiff during the years they allegedly cohabited.

Opposing transfer, plaintiff alleges that the contractual promise upon which plaintiff bases this action was made in New Jersey and that the contract was partially performed in New Jersey. Thus, plaintiff contends, New Jersey law governs the enforceability of the alleged contract. Plaintiff also contends that defendant is a resident of New Jersey. In support of this contention, plaintiff states that defendant owns at least three residences, including homes in Florida, New Jersey and Pennsylvania, but could only be served at his residence in New Jersey.

Plaintiff argues that she will call at least nine witnesses, not all of whom are willing witnesses, but each of whom resides in the New Jersey area. Further, plaintiff plans to call an expert witness—an economist—who resides in Summit, New Jersey. Plaintiff states that it would be a severe hardship to arrange for this expert witness to travel to Florida, and it might be impossible to compel the appearances of the other witnesses in Florida.

These circumstances demonstrate only that trial of this case in Florida would shift the inconvenience from defendant to plaintiff; such a showing is insufficient, under the standards outlined above, to justify disturbing plaintiff's choice of forum by transferring this case to Florida. There may be a recognizable public interest in keeping this contract action in New Jersey, since it is based primarily upon a right of action only recently recognized by the courts of New Jersey. Therefore, defendant's motion to transfer this case to the Southern District of Florida is denied.

Plaintiff's attorney is requested to submit a form of order consistent with this opinion.