William B. ALLEN

v.

Christa H. ALLEN.

Christa H. ALLEN

v.

William B. ALLEN.

Civ. A. Nos. 79–2709, 80–29.

United States District Court,
E. D. Pennsylvania.

July 27, 1981.

Albert J. Olizi, Jr., Philadelphia, Pa., for William Allen.

Max Meshon, Philadelphia, Pa., for Christa Allen.

## MEMORANDUM

EDWARD R. BECKER, District Judge.

The parties to this action, William B. Allen (William) and Christa H. Allen (Christa) are husband and wife. They are presently separated and are involved in a contested divorce proceeding in Bucks County, Pa. The actions before us essentially concern certain marital property of the parties, much of which is the subject of a number of other actions pending in Bucks County. This memorandum addresses the question whether the "domestic relations" exception to federal diversity jurisdiction, *see Solomon v. Solomon*, 516 F.2d 1018 (3rd Cir. 1975), divests us of the power to hear this case.

We have before us two related actions. The first-filed, C.A. No. 79–2709, was instituted by William on February 21, 1979 in the Court of Common Pleas of Bucks County. The action alleges that Christa breached a post-nuptial property settlement (separation) agreement by refusing to pay four existing mortgages and by refusing to pay an additional $10,000.00 sum, both of which debts she had allegedly agreed to assume by terms of the post-nuptial agreement. On July 24, 1979 Christa filed a petition for removal from the state court on the basis of

diversity jurisdiction, and the action was thereafter removed here.[1]

On September 10, 1979 Christa filed an answer to the complaint, incorporating certain affirmative defenses and a counterclaim. These pleadings are predicated in significant part upon the fact that William is an attorney and that he represented both of them in connection with the post-nuptial agreement that lies at the heart of their dispute. Christa denies the validity of that agreement, alleging that William fraudulently obtained her signature through a series of misrepresentations, and that he thereby abused the fiduciary relationship assumed by acting as her attorney. In the counterclaim Christa seeks to enjoin William from recording the deed to his Pennsylvania home, to declare the property settlement void, and to return all personal property that she claims he confiscated. The allegations of this counterclaim are repleaded in and form the basis for C.A. No. 80–29, filed by Christa in this court on January 3, 1980, alleging diversity jurisdiction.

■ On March 27, 1980, William moved to remand the first action to Bucks County, contending that this court lacked jurisdiction. He argued first that there was no diversity of citizenship[2] and, in the alternative, that the domestic relations exception to federal jurisdiction required that we stay our hand. On April 11, 1980, he moved to dismiss the second action for lack of subject matter jurisdiction based upon the domestic

---

1. The five-month delay before Christa petitioned for removal was attributable to difficulties in locating her for service of process. Because service was not made within the thirty days provided by Pa.R.Civ.P. 1009, it was necessary for William twice to reinstate his complaint pursuant to Pa.R.Civ.P. 1010, first on April 17, 1979, and again on June 15, 1979. Service was finally made on June 29, 1979. By order of Judge Bortner of the Court of Common Pleas of Bucks County dated July 2, 1980, Christa's petition for removal was docketed (almost a year after the action had actually been removed to this court). The same order vacated a default judgment which had mistakenly been entered on July 25, 1979, after the action had been removed, and stayed further proceedings pending resolution in this court.

2. William is a resident of Pennsylvania. Christa is currently a resident of New Jersey, although William has attempted to depict her presence there as non-domiciliary, pointing out that she retains certain contacts, including bank accounts and voter registration, in Pennsylvania. We think it is plain from the deposition testimony, however, that Christa is a domiciliary of New Jersey. The critical question, however, for the purpose of determining the existence *vel non* of diversity, is the date on which she became a New Jersey resident.

Christa claims that she was "locked out" of the marital home in December 1978. In December and January she lived a nomadic existence, staying in various motels in Pennsylvania and New Jersey. Thereafter, she entered into a lease agreement for an apartment in Bucks County, Pa., where she remained until June. During the early part of 1979, she began working in New Jersey. Sometime in the spring, she agreed with a friend to purchase a home jointly in New Jersey; the friend would pay the entire down payment, while she would pay him $25.00 per week and would assume the mortgage payments. The agreement of sale and mortgage were signed in April, and settlement was made in May. Christa moved in, according to her deposition at page 55, on Father's Day, 1979. Although the briefs represent her move to have been made on June 12, an almanac, of which we may plainly take judicial notice pursuant to F.R.E. 201, reveals that date to have been June 17. The date is significant, for the final reinstitution of the complaint in C.A. No. 79–2709 was on June 15. Service of process was not accomplished until June 29. It thus appears that though Christa fully intended to move to New Jersey, she did not actually do so until after William filed his second reinstated (and efficacious) complaint, and diversity therefore apparently did not exist at the time of filing the complaint, though it did exist at the time of service. It also existed at the time Christa filed the second complaint in January 1980.

We do not decide the diversity issue, however, for since we find that diversity did exist with respect to the second action, we must in any event reach the domestic relations exception question. We thus need not address the questions (1) whether state or federal law should apply to determine when the action commenced for purposes of determining diversity jurisdiction, *see Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980); or (2) whether Pa.R.Civ.P. 1007, regarding the commencement of an action, is the same as F.R.Civ.P. 3, rendering the fact that service of process was made *after* Christa moved to New Jersey irrelevant.

relations exception only. Christa contests both of these motions, maintaining that these actions concern contractual, rather than domestic, matters, and that they are accordingly the appropriate subject of federal diversity jurisdiction.

■ In addition to the two actions before this court, the following actions between Christa and William Allen are presently pending in the Bucks County courts:

(1) No. 78–16138–09–6, a custody action, initiated December 21, 1978, by William;

(2) No. 78–13170–06–6, a custody action, initiated December 22, 1978, by Christa;

(3) No. 79–894–12–6, a replevin action, initiated January 24, 1979, by Christa;

(4) No. 79–4668–05–3, a divorce action, initiated May 1, 1979, by William;

(5) No. 11033–06–D, a support action, initiated July 18, 1979, by Christa;

(6) No. AO6–80–612760–10–3, a suit for equitable distribution, initiated January 29, 1981, by Christa;

(7) & (8) two petitions for alimony initiated by Christa, on November 6, 1980, and December 27, 1979.

In *Solomon, supra,* the Third Circuit described the development of the so-called domestic relations exception to federal jurisdiction:

Traditionally, the federal courts have evinced great reluctance to entertain cases involving domestic relations. This doctrine is not premised upon explicit statutory language limiting the jurisdictional authority of federal courts . . . Rather, the jurisdictional exception for domestic relations has been judicially carved, beginning with and extending through a series of dicta in decisions of the United States Supreme Court.

516 F.2d at 1021–22. The court proceeded to trace that history, and concluded that the import of the previous Supreme Court cases was that "the federal courts do not have jurisdiction in domestic relations suits *except* where necessary to the effectuation of prior state court judgments involving the same matters or where jurisdiction lies by dint of the participation and review of territorial courts." *Id.* at 1024 (footnotes omitted). Because the *Solomon* action, which concerned the child support and visitation rights of a separation agreement,[3] did not fit into one of those narrow categories, the court held, over the vigorous dissent of Judge Gibbons,[4] that the domestic relations exception applied, defeating federal jurisdiction.

The critical question, of course, is what a domestic relations case is. While the *Solomon* court made some helpful comments as to the result in extreme cases, it left a large "gray area" for future caselaw development. For example, *Solomon* made clear that child custody and support disputes fall within the exception.[5] On the other hand, the Court stated:

[We] do not mean to suggest that a separation agreement may never be litigated in the federal courts by parties between whom there is diversity of citizenship. In a different case in which the custody of no child was involved, in which there was neither pending state court action nor an agreement to litigate in the state courts,

---

**3.** The separation agreement involved in *Solomon* gave custody of the children to the wife, and obliged the husband to make payments for their support. The wife sued for support payments; the husband conceded non-payment, but argued that he ceased payment only after the wife had materially breached the agreement by denying his visitation rights.

**4.** Judge Gibbons contended that there was "no well-established domestic relations exception" to federal jurisdiction, but rather "a collection of misstatements of ancient holdings and of ill-considered dicta," and characterized the exception as "myth." 516 F.2d at 1030. Citing with approval Judge Friendly's opinion in *Phil-*

*lips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel,* 490 F.2d 509 (2d Cir. 1973) and Judge Weinstein's opinion in *Spindel v. Spindel,* 283 F.Supp. 797 (E.D.N.Y.1968), Judge Gibbons concluded that there is no matrimonial status exception to diversity jurisdiction.

**5.** The Court observed (in the custody context) that a divorce decree *without more* does not remove the case from the arena of domestic relations so as to prevent federal court adjudicatory intervention, for the parent-child relationship is not severed by a divorce decree. 516 F.2d at 1024.

and in which there was no threat that a feuding couple would play one court system off against the other, we might well assume jurisdiction. But all the above dangers are involved in the present case and lead us to the conclusion that the domestic relations doctrine should apply. *Id.* at 1025.

*Solomon's* progeny do not aid one seeking a bright line test. In *Zimmermann v. Zimmermann*, 395 F.Supp. 719 (E.D.Pa.1975), for example, which alleged simply that defendant had failed to pay sums he had agreed to in agreements that had been incorporated into a final divorce decree nine years earlier, Judge Bechtle refused to dismiss, holding that the domestic relations exception did not apply in a case where none of the three factors listed in *Solomon* were present. The case presented only "a dispute between two persons, who for over nine years have been divorced and living apart and between whom there have been no domestic relations, as to whether there has been compliance with two contracts existing between them." *Id.* at 721. It thus appears that where all that is involved is a dispute over property, without more, and where what is sought is a money judgment, the federal courts will have jurisdiction.

The case at bar presents some, but not all, of the "dangers" cited in *Solomon*. Although a clear standard has yet to emerge to guide our weighing of those factors which are present, it is not necessary that we formulate a standard that will apply in close cases, for this is not such a case. For the reasons that follow, we are convinced that this is a clear case for the application of the domestic relations exception.

The agreement which is at the center of both actions before us was entered into in order to determine the rights and obligations to marital property upon separation. The construction and validity of that agreement are also relevant to certain of the Bucks County actions, and certain of the property overlaps.[6] While Christa resists enforcement of the agreement on grounds of fraud and breach of fiduciary duty, and contends that this is a straightforward contract action with no domestic overtones, that position is somewhat disingenuous. While it is true that the actions as pled sound in contract and in fraud, it is nonetheless plain that those actions must be interpreted against the background of extreme acrimony emanating from the parties' marital dispute and extreme infighting over their property rights.

Turning to the factors articulated in *Solomon*, we note that, while custody is not an issue in the actions before us, custody and child support actions are pending in Bucks County. The pending state actions contain overlapping factual and legal matrices. There are a multiplicity of intertwined suits, the dominant theme of which is a dispute over the ownership of marital property. Not only is marital property at the heart of the conflict, but continuing property relations, rather than just a single transaction, are at issue. The short of it is that this is precisely the type of case *Solomon* warned against, in which the parties are attempting to play one court system off against the other.[7]

Accordingly, we will grant William's motion to remand C.A. No. 79–2709 and his motion to dismiss C.A. No. 80–29.

---

6. For example, the separation agreement provides for the transfer of a Newtown property; that property is also involved in the equitable distribution action in the state court.

7. One of Christa's contentions is that, because of William's position as a member of the Bucks County Bar, she will not get fair consideration in the Bucks County court system.