**Jeanne Brandon ANASTASI, Plaintiff,**

v.

**Joseph ANASTASI, Defendant.**

**Civ. A. No. 81–2486.**

United States District Court,
D. New Jersey.

Aug. 20, 1982.

See also, D.C., 532 F.Supp. 720.

Harvey R. Pearlman, Friedman, Kates & Pearlman, P. C., Rutherford, N. J., for plaintiff.

Marcia L. Mazer, Mazer & Cofsky, Cherry Hill, N. J., for defendant.

OPINION

DEBEVOISE, District Judge.

Plaintiff instituted this action in the Chancery Division of the Superior Court of New Jersey, charging that defendant had breached his agreement "to provide plaintiff with all of her financial support and needs for the rest of her life". Defendant removed the case to the federal court pursuant to 28 U.S.C. § 1441(a) on the basis of diversity of citizenship. I raised the question whether the case should be remanded to the state court on the ground that it is within the domestic relations exception to federal jurisdiction notwithstanding that there is diversity of citizenship. After briefing and oral argument I concluded that under applicable New Jersey law the action was akin to a contract action rather than a domestic relations action and therefore the domestic relations exception to jurisdiction did not require remand. *Anastasi v. Anastasi*, 532 F.Supp. 720 (D.N.J.1982).

In reaching my conclusion I relied heavily upon two New Jersey cases which dealt with agreements for life support entered into by two cohabiting but unmarried per-

sons. *Kozlowski v. Kozlowski*, 80 N.J. 378, 403 A.2d 902 (1949); *Crowe v. DeGioia*, 179 N.J.Super. 36, 430 A.2d 251 (App.Div.1981). Each held that such agreements were to be treated under the rules established by the law of contracts. In *Crowe v. DeGioia* the Court (with one judge dissenting) reversed an order of the trial court awarding plaintiff weekly support payments *pendente lite*, requiring defendant to pay plaintiff's outstanding medical, dental, drug and other bills, permitting plaintiff the exclusive use of defendant's dwelling, and requiring defendant to continue to pay all costs, enjoining defendant from disposing of his assets and awarding plaintiff a counsel fee *pendente lite*.

In ruling as I did I stated:

I conclude that the exception will apply only if two conditions are met: first, the state exhibits a significant interest in this kind of relationship akin to the state's interest in the marriage and the parent-child relationships; and, second, in order to protect this interest a court must make the same kinds of inquiries that have traditionally brought into play the domestic relations exception.

. . . . .

Had the views of the trial court and of the dissenting opinion on appeal prevailed in *DeGioia*, I would have concluded that the domestic relations exception to jurisdiction should be applied were such an action instituted in the federal court. The state would have evidenced a sufficient interest in the relationship of unmarried couples to have devised legal mechanisms to protect the parties upon dissolution of the relationship. It would be necessary for a court to inquire into the details of the relationship and into the financial circumstances of the parties. It would be necessary to do this on a continuing basis at least during the course of the litigation. This is precisely what the domestic relations exception is designed to avoid.

*Anastasi v. Anastasi, supra*, at 724, 725.

On July 8, 1982 the New Jersey Supreme Court reversed the judgment of the Appellate Division of the Superior Court in *Crowe v. DeGioia*, 90 N.J. 126, 447 A.2d 173 (1982). The Supreme Court ruled that *Crowe* should be permitted to remain in the home, that support payments to meet "her minimal needs" should be continued *pendente lite*, and that "necessary" medical, dental and pharmaceutical bills should continue to be paid by DeGioia. The Supreme Court held that DeGioia should not be restrained from transferring his assets and that costs and counsel fees should not be awarded in the application for temporary relief. Observing that the Chancery Division rather than the Law Division was the more appropriate forum for the case, the Court stated:

Moreover, a similarity exists between many of the issues and proofs in this type of case and those in a matrimonial action, the exclusive province of the Chancery Division under *R*. 4:75. Consequently, in this case, as we anticipate will be true in the majority of such cases, the Chancery Division is the appropriate forum. Selection of the Law or Chancery Division in future cases should reflect the responsible exercise of judgment by counsel, subject to the control of the court, to best achieve a just result in this evolving cause of action.

At 138, 447 A.2d 173.

After the New Jersey Supreme Court's opinion was issued I directed the parties to show cause why the instant action should or should not be remanded to the state courts. A hearing was held and I conclude that in the present posture of New Jersey law this kind of case is within the domestic relations exception to jurisdiction and must be remanded.

New Jersey's Supreme Court emphasized that it was not awarding alimony because "alimony may be awarded only in a matrimonial action for divorce or nullity". It was, it stated, "applying traditional equitable principles" in an attempt to "achieve substantial justice" by adjusting "the rights and duties of parties in light of the realities of their relationship". At 135, 447 A.2d 173.

For federal jurisdictional purposes, it is immaterial what label is ascribed to the actions New Jersey courts are now required to take in "palimony" cases. What matters is not the label but rather the function the courts are called upon to perform. As delineated by the New Jersey Supreme Court, a palimony case applying New Jersey law is a domestic relations case within the exception to federal jurisdiction.

In *Crowe v. DeGioia* the Supreme Court defined a significant state interest in living relationships established by agreement rather than by formal marriage. It noted the frequency of such relationships and the need to protect the interests of the parties to them, stating:

> Increasing numbers of unmarried couples live together. The number of households comprised of unmarried partners rose from approximately 12,000 in 1960 to more than 1.5 million in 1980. U. S. Bureau of Census, Dept. of Commerce, 1960 *Census of Population*, 'Persons by Family Characteristics,' Table 15 (1960) and Current Population Report, Series P-20, No. 365, 'Marital Status in Living Arrangements,' Table 7 (1980). Although plaintiff need not be rewarded for cohabiting with defendant, she should not be penalized simply because she lived with him in consideration of a promise for support. Our endeavor is to shape a remedy that will protect the legally cognizable interests of the parties and serve the needs of justice.

At 135, 447 A.2d 173.

The Court evidently contemplates that palimony actions will be commenced with increasing frequency and in its opinion provided guidance as to the Division of the Superior Court in which such actions should be filed—normally the Chancery Division. At 137, 447 A.2d 173.

Not only does *Crowe v. DeGioia* announce a significant state interest in the consensual live-in relationship, it requires that in order to protect this interest a trial court must make the same kinds of inquiries that have traditionally brought into play the domestic relations exception to federal jurisdiction.

In *Crowe v. DeGioia* the Court's rationale requires a finding of a reasonable basis for one of the parties to remain in the non-marital home. It requires a finding of the minimal needs of the moving party in order to form a basis for an award of interim support payments. It requires a finding as to the necessity of medical, dental and pharmaceutical bills. Final resolution of the controversy will inevitably require extensive probing into many other issues similar to those in a matrimonial action in order "to best achieve a just result in this evolving cause of action".

For the reasons set forth in my earlier opinion, these are the kinds of inquiries and judgments which the state courts are best equipped to handle. They are the kinds of inquiries and judgments which, under the domestic relations exception to jurisdiction, may not be made by federal courts.

For these reasons the case will be remanded to the Superior Court of New Jersey, Chancery Division. I will enter a form of order.