**Emmanuel JOHNSON, Plaintiff,**

**v.**

**Mary THOMAS, Defendant No. 1,
Craig Gallet, Defendant No. 2**

**James Hansen, Defendant
No. 3, Defendants.**

**No. 5:92–CV–75.**

United States District Court,
W.D. Michigan, S.D.

Dec. 11, 1992.

Emmanuel Johnson, pro se.

Terry F. Knoll, Charlotte, MI, Thomas S. Reavely, Reavely, Shinkle & Bauer, Des Moines, IA, for defendants.

## OPINION

QUIST, District Judge.

This case involves claims of fraud, misrepresentation, breach of contract, unjust enrichment, intentional infliction of emotional distress, conversion, interference with contract, conspiracy, and tortious interference with economic relations. The claims arise out of a marriage between the plaintiff and his former wife and an alleged contract between plaintiff and his former wife under which the plaintiff claims to have promised to continue to provide economic support to his former wife in order for her to complete her college education in exchange for her promise to provide him with professional services once she obtained her degree. The plaintiff also asserts claims against his wife's current husband and her attorney. Jurisdiction in this Court is based on diversity. The defendants have filed a Motion to Dismiss based upon lack of subject matter jurisdiction because of the domestic relations exception to diversity jurisdiction and based upon lack of personal jurisdiction over the defendants.

## FACTS

In 1985, plaintiff, a Michigan resident, married Mary Thomas, an Iowa resident, in Illinois. At that time, Ms. Thomas was also married to another man. In 1988, Ms. Thomas divorced both men. Plaintiff claims that plaintiff and Ms. Thomas entered into a domestic partnership agreement prior to the divorce. Plaintiff contends that immediately following their divorce, plaintiff and Ms. Thomas reaffirmed this contractual agreement. As part of the alleged agreement, plaintiff agreed to pay for Ms. Thomas's college education, and in exchange she would provide him with professional services upon graduation. Plaintiff contends that he and Ms. Thomas operated under this agreement in all states in which they resided, including Michigan.

In April 1991, plaintiff filed an action in Michigan state court for a dissolution of an alleged common law marriage with Ms. Thomas. Plaintiff claims a common law marriage based on Iowa law. At the time the lawsuit was filed, plaintiff was a Michigan resident, and Ms. Thomas was an Iowa resident. In July 1991, plaintiff amended his Michigan state court complaint to allege the existence of a valid common law marriage in Texas. In July 1991, plaintiff amended his Michigan state court complaint to allege in the alternative the existence of a domestic partnership agreement with Ms. Thomas. Plaintiff further alleges that Ms. Thomas breached this agreement, misrepresented her intentions, and defrauded plaintiff. In September 1991, plaintiff amended his Michigan state court complaint seeking a dissolution of alleged common law marriages in every state in which the plaintiff and Ms. Thomas lived or visited, including Iowa and Texas. In the alternative, plaintiff seeks a dissolution of the domestic partnership agreement. This action is still pending.

In June 1991, Ms. Thomas filed a Petition for Declaratory Judgment in Iowa state court for a determination as to the existence of the alleged Iowa common law marriage. This action is still pending.

In April 1992, plaintiff filed an action in Texas state court to set aside plaintiff and Ms. Thomas's 1988 divorce. Plaintiff's action in Texas alleges misrepresentation and fraud. This action is still pending.

In August 1992, plaintiff filed the instant case making basically the same claims as are currently pending in the state courts. However, plaintiff added two additional defendants, both Iowa residents: Craig Gallet, Ms. Thomas's current husband, and James Hansen, Ms. Thomas's attorney in the declaratory judgment action pending in Iowa.

In the instant case, plaintiff claims fraud, misrepresentation, breach of contact, unjust enrichment, intentional infliction of emotional distress, and negligence all relating to his marriage to Ms. Thomas and the domestic partnership agreement. Plaintiff further claims conversion, interference of contract, conspiracy to defraud, conspiracy to commit wrongful acts, and tortious interference with economic relations. The latter allegations involve Mr. Gallet and Mr. Hansen.

Plaintiff claims that Ms. Thomas misrepresented herself and breached their contract causing unjust enrichment and emotional distress while the two lived in Michigan.

Plaintiff claims that Ms. Thomas later removed valuable property from his residence with the help of the co-defendants. Plaintiff claims that Mr. Gallet and Mr. Hansen directed Ms. Thomas to come to Michigan and remove properties belonging to plaintiff and transfer them to their control. Plaintiff claims that Mr. Gallet and Mr. Hansen sent money to Ms. Thomas to aid her while she was in Michigan.

Defendants have filed a Motion to Dismiss on two grounds. First, they claim that subject matter jurisdiction is lacking because of the domestic relations exception to diversity jurisdiction. Second, they claim that personal jurisdiction is lacking because defendants do not have sufficient contacts with Michigan.

## DISCUSSION

### Subject Matter Jurisdiction

 Diversity jurisdiction is ordinarily appropriate if complete diversity exists and more than $50,000 is in controversy. However, a domestic relations exception to diversity jurisdiction exists. The exception exists because domestic relations involves local problems "peculiarly suited to state regulation and control, and peculiarly unsuited to control by federal courts." *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1215 (6th Cir.1981) (quoting *Buechold v. Ortiz*, 401 F.2d 371, 373 (9th Cir.1968)). State courts can more efficiently deal with these cases because they have developed an expertise in resolving these cases. *Id.* The federal courts must "sift through the claims of the complaint to determine the true character of the dispute to be adjudicated." *Id.* at 1216 The federal courts will not exercise jurisdiction over "divorce proceedings, claims which *primarily* concern domestic relations, or claims which would require the federal courts either to interfere with state court jurisdiction or with state decrees." 1 James W. Moore, *Moore's Federal Practice* ¶ .71, at 750 (2d ed. 1992). This exception does not apply to contract or tort claims having only domestic relations overtones. *Drewes v. Ilnicki*, 863 F.2d 469, 471 (6th Cir.1988). For example, federal courts will exercise jurisdiction to enforce support arrearage, but only if the arrearage is not subject to modification or does not require an interpretation of an ongoing divorce dispute. *Id.*

A federal district court in New Jersey has held that a palimony case is a domestic relations case within the domestic relations exception to diversity jurisdiction, reversing its earlier holding that a palimony case was a contract case. *Anastasi v. Anastasi*, 544 F.Supp. 866 (D.N.J.1982). *Anastasi* relied on a New Jersey Supreme Court case which noted the increasing numbers of unmarried couples and households comprised of unmarried partners. The New Jersey Supreme Court stated:

[A] similarity exists between many of the issues and proof in this type of case and those in a matrimonial action, the exclu-

sive province of the Chancery Division under R. 4:75. Consequently, in this case, as we anticipate will be true in the majority of such cases, the Chancery Division is the appropriate forum. Selection of the Law or Chancery Division in future cases should reflect the responsible exercise of judgment by counsel, subject to the control of the court, to best achieve a just result in this evolving cause of action.

*Id.* at 867 (quoting *Crowe v. DeGioia,* 90 N.J. 126, 447 A.2d 173 (1982)). The court held that a determination of whether a case falls within the domestic relations exception depends on the function the court is asked to perform and not the label attached to the action. *Id.* at 868. The court stated that the domestic relations exception applied if two conditions are met:

> first, the state exhibits a significant interest in this kind of relationship akin to the state's interest in the marriage and the parent-child relationships; and second, in order to protect this interest a court must make the same kinds of inquiries that have traditionally brought in to play the domestic relations exception.

*Id.* at 867. The court held that the State of New Jersey met these conditions.

Other courts have held that disputes couched in contract terms are in fact domestic relations cases within the exception. In *Solomon v. Solomon,* 516 F.2d 1018 (3rd Cir.1975), the Third Circuit held that the breach of a separation agreement was in fact a domestic relations dispute. The separation agreement granted the wife custody of the couple's child and the husband visitation rights. The husband was required to make weekly support payments. The husband stopped making the support payments claiming that the wife breached the separation agreement by denying him visitation. The court held that this dispute was within the domestic relations exception because the outcome was contingent upon a determination of the visitation rights. The court noted that classifying a dispute as domestic relations "does not depend on the existence, and impliedly the continuation, of a marriage relationship." *Id.* at 1025. *Solomon* laid out three criteria for

determining whether a seemingly contract case falls within the domestic relations exception. The criteria are: (1) are children involved, (2) are other state court actions pending, and (3) is there a threat that a feuding couple will play one court system off another. *Id.*

In *Allen v. Allen,* 518 F.Supp. 1234 (E.D.Pa.1981), the court held that an action for breach of a separation agreement was within the domestic relations exception. The wife filed an action to declare the property settlement void and for the return of all personal property that she claimed her husband had confiscated. The couple had eight other actions pending in state courts. The court stated:

> [I]t is nonetheless plain that those actions must be interpreted against the background of extreme acrimony emanating from the parties' marital dispute and extreme infighting over their property rights.

*Id.* at 1237. Relying on the *Solomon* criteria, the court stated that the "pending state actions contained overlapping factual and legal matrices." *Id.* The court stated that not all the *Solomon* criteria need to be met to fall within the exception.

In the instant case, this Court is satisfied after "sifting" through the claims that this case is—to take plaintiff's best position—a palimony suit in which this Court is being asked to adjudicate a property settlement stemming from the termination of a domestic relationship. Even the fact of whether the couple is married is disputed as evidenced by the numerous lawsuits pending in state courts. No matter how well plaintiff crafts his lawsuit to take on the guise of a contract and conversion case, the realities of a domestic relations dispute are preeminent. Plaintiff's lawsuit attempts to extract a settlement and return of property from Ms. Thomas to whom plaintiff claims he was married, divorced, and later may have remarried by common law, and now he seeks to divorce if married. In fact, plaintiff currently claims in state court that he is married to Ms. Thomas and, in the alternative, that he has a valid domestic partnership agreement with Ms. Thomas—

an agreement that plaintiff claims he entered into with Ms. Thomas while married and reaffirmed after the couple divorced, if the divorce is in fact valid (this is now being contested in a state court in Texas).

■ A domestic partnership agreement if it exists is no ordinary contract. This contract is in essence a nontraditional marriage by which the couple agree to their own living arrangement—it is not a business contract.

■ *Anastasi*, which held that palimony suits fall within the domestic relations exception to diversity jurisdiction, stated that the label attached to an action was not as important as the function the court is being asked to perform. 544 F.Supp. 866. This Court agrees. In a palimony case, the court is asked to structure a settlement for the end of a domestic relationship. This function is the same one a court performs when granting a divorce. The fact that the label is different should not defeat the fact that this type of action falls within the exception. Certainly, the court would find that a dissolution case and an annulment case would fall within the exception regardless of the fact that the do not possess the label of divorce. The state courts have an expertise in the delicate situation presented when a domestic relationship is ended. This Court believes that under the domestic relations exception that it should defer to the expertise of the state courts.

In addition, this Court believes that this case falls within the domestic relations exception to diversity jurisdiction under the *Solomon* criteria. Two of the criteria that *Solomon* used to determine whether a seeming contract case falls within the domestic relations exception are the existence of pending state court actions and the threat that a feuding couple will play one court system off another. The instant case clearly meets these criteria. Currently these parties have cases pending in state courts in Michigan, Texas, and Iowa. These cases all involve plaintiff and Ms. Thomas's marital status. In addition, the Michigan case involves claims identical to the claims in this Court with the exception that the claims in this Court include Mr. Gallet and Mr. Hansen. However, the claims against Mr. Gallet and Mr. Hansen are inextricably intertwined with the claims against Ms. Thomas, and the resolution of these claims may well depend upon the marital status of plaintiff and Ms. Thomas. Plaintiff appears to have filed lawsuits in as many jurisdictions as possible in the hope of achieving a favorable result in one jurisdiction (the Court is aware that Ms. Thomas filed the lawsuit in Iowa). As the court stated in *Allen*, these actions "must be interpreted against the background of extreme acrimony emanating from the parties' marital dispute and extreme infighting over their property rights." The instant case and the state actions involve "factual and legal matrices" which should best be left for the state courts to resolve.

*Abstention*

■ Recently the United States Supreme Court stated that the federal courts may have to abstain from a case:

> involving elements of the domestic relationship even when the parties do not seek, divorce, alimony, or child custody. This would be so when a case presents "difficult questions of state law bearing on policy problems of substantial public importance whose importance transcends the result in the case then at bar." Such might well be the case if a federal suit were filed prior to effectuation of a divorce, alimony, or child custody decree, and the suit depended on a determination of the status of the parties.

*Ankenbrandt v. Richards*, —— U.S. ——, ——, 112 S.Ct. 2206, 2216, 119 L.Ed.2d 468 (1992).

The instant case seems be the kind of case that the Court had in mind when it articulated the possibility of abstention in *Ankenbrandt*. The instant case was filed prior to effectuation of a divorce decree—a determination of this very issue is currently pending in three state courts. Moreover, the outcome of this suit will depend upon the status of the parties as determined by the state courts.

## CONCLUSION

For the reasons stated in this opinion, defendants' Motion to Dismiss is GRANTED based on the domestic relations exception to diversity jurisdiction. In the alternative, defendants' Motion To Dismiss is GRANTED based upon abstention. An Order consistent with this Opinion will be issued.